Willis CURDY, Todd L. Onken, Tom R. Lindskog, James R. Linville, David E. Custer, Jeff E. Kinderman, Thomas R. Carlsen, and Everett Weniger, Petitioners,

v.

**DEPARTMENT OF AGRICULTURE,**
Respondent.

No. 01–3332.

United States Court of Appeals,
Federal Circuit.

May 30, 2002.

Marian E. Sullivan, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washing-

ton, DC, argued for respondent. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief was Hugh Maxwell, Attorney, Office of General Counsel, United States Forest Service, of Arlington, VA.

Before MAYER, Chief Judge, RADER and SCHALL, Circuit Judges.

MAYER, Chief Judge.

Willis Curdy, et al., appeal the decision of the Merit Systems Protection Board denying them retirement credit for non-work periods prior to October 1, 1980. *Willis Curdy v. Dep't of Agric.*, DE–0831000270–I–3 (M.S.P.B. May 15, 2001). Because the board properly applied *Bain v. Office of Personnel Management*, 978 F.2d 1227 (Fed.Cir.1992), we affirm.

### Background

A federal employee may receive service credit toward retirement for leaves of absence without pay ("LWOP") of up to six months annually. 5 U.S.C. § 8332(f) (2000). The Office of Personnel Management, however, may exclude "temporary or intermittent" employees from receiving this credit. *Id.* § 8347(g). At the time Curdy began his service, employees were classified as full-time, part-time, or inter-mittent. *Bain*, 978 F.2d at 1230. Until October 1, 1980, the Office of Personnel Management classified "seasonal workers," those workers who work annually recur-ring periods of less than twelve months, as "intermittent." 5 C.F.R. § 340.401(a) (2002). We determined that in the ab-sence of a definition of "intermittent" in Title 5, this classification was reasonable: seasonal workers did not fit into the full-time category because they worked for part of the year, or the part-time category because when on duty, they worked full administrative work-weeks. 978 F.2d at

1231. Thus, prior to October of 1980, sea-sonal workers accrued service credit for only that time they actually worked.

On October 1, 1980, the Office of Per-sonnel Management issued Federal Per-sonnel Manual Letter 296–75 stating that as of that date, "time in nonpay status of . . . seasonal . . . employees will be treated as LWOP for service credit and benefit purposes." It was not until May 4, 1984, that the Office of Personnel Management issued Federal Personnel Manual letter 340–2, defining seasonal employment. In *Bain*, however, we held that the policy allowed seasonal employees, as of October 1, 1980, not May 4, 1984, to begin to accrue up to six months of credit towards retire-ment annually for time in LWOP status. *Id.* at 1232. The policy did not apply to employment before 1980. *Id.*

Curdy is a seasonal smoke jumper (aeri-al wildland firefighter) employed by the Department of Agriculture in the Forest Service. He became a permanent employ-ee in 1972, and is on duty during the fire season, generally from mid-June through early September. Until 1980, he was clas-sified as an intermittent worker and re-ceived credit toward retirement for only the actual time he worked. He petitioned the Forest Service for credit for nonwork periods performed prior to 1984. The agency denied his request. He appealed to the Merit Systems Protection Board which, relying on *Bain*, mitigated the agency's denial of credit for nonpay status, to credit for nonpay status for up to six months of service annually after October 1, 1980. Curdy appeals, seeking retirement credit for nonpay periods prior to October 1, 1980.

### Discussion

A board decision must be affirmed un-less it is found to be: "(1) arbitrary, capri-cious, an abuse of discretion, or otherwise

not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

■ Curdy argues that *Bain* is factually distinguishable because he is a firefighter, not an Internal Revenue Service employee, and therefore his classification as "intermittent" by the Office of Personnel Management was unreasonable. We do not agree. Just like the Internal Revenue Service employees' tour of duty of full administrative work-weeks for six to eight months per year, *Bain*, 978 F.2d at 1229, Curdy worked full administrative work-weeks for fixed periods of approximately three months per year. Neither tours of duty fit within the full-time or part-time classifications. The fact that the smoke jumpers' tour was more predictable as to the date and length of duty is insufficient to place it outside the "intermittent" category as full-time or part-time. Thus, substantial evidence supports the board's factual determination that *Bain* applies here, and we agree that the Office of Personnel Management reasonably classified the smoke jumpers as intermittent.

■ Curdy also argues that in light of 5 U.S.C. § 8336(c) and its legislative intent, the 1980 policy granting service credit for nonpay periods should be applied retroactively into the 1970s. Federal firefighters may retire voluntarily upon reaching the age of fifty or accruing twenty years of government service. 5 U.S.C. § 8336(c) (2000). Curdy argues that in 1972, when Congress extended this preferential retirement treatment to firefighters, it intended the occupation to be reserved for the young with greater strength and stamina. He claims that by refusing to grant him six months of service credit for the years prior to 1980, this intent will be thwarted because he will have to work beyond the age of fifty to accrue twenty years of

service. We recognize the dangerous nature of smoke jumping, but it appears that Congress primarily intended to allow early retirement to firefighters who are "required to remain at a duty station 72 hours a week for 52 weeks a year, minus leave, including Sundays and holidays." H.R.Rep. No. 92–840 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2941, 2942. And Congress did not alter the means by which service is accrued. "[W]ithout a statutory requirement compelling retroactive application of the 1980 change, OPM properly expressed its intention to effect its change prospectively only." *Bain,* 978 F.2d at 1232.

### Conclusion

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

*AFFIRMED.*